FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 02, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEONEL C.,<br><br>                    Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                  Defendant. | NO: 4:18-CV-5133-RMP<br><br>ORDER DENYING PLAINTIFF'S<br>AND GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Leonel C.[1], ECF No. 13, and the Commissioner of

Social Security ("Commissioner"), ECF No. 20. Plaintiff seeks judicial review,

pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) (applying § 405(g) to SSI

decisions), of the Commissioner's denial of his claim for supplemental security

income ("SSI") under Title XVI of the Social Security Act (the "Act"). ECF No. 13

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first
name and last initial, and, subsequently, Plaintiff's first name only, throughout this
decision.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 1

at 1−2.  Having reviewed the parties' motions and the administrative record, the Court is fully informed.  The Court denies Plaintiff's motion, grants the Commissioner's motion, and determines that the ALJ's decision should remain intact on the basis that it is supported by substantial evidence and free of harmful legal error.

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff Leonel C. was 42 years old when he applied for SSI.  Administrative Record ("AR")[2] 16, 428.  He alleged a disability onset date of June 1, 2009, when he was 38 years old.  AR 71.  Leonel's claim for disability was based on the following illnesses, injuries, or conditions: degenerative disc disease or disc protrusion, back injury, back pain, numbness in legs, kidney problems, and Hepatitis C.  *Id.*  The Commissioner denied Leonel's application initially and upon reconsideration, and Leonel requested a hearing.  AR 99−116.

### B. January 4, 2017 Hearing

Leonel was represented by attorney Chad Hatfield at his hearing before Administrative Law Judge ("ALJ") Eric Basse on January 4, 2017.[3]  AR 10, 35.  Leonel testified in response to the ALJ's and his attorney's questions.  In addition,

---

[2] The AR is filed at ECF No. 10.

[3] The record is unclear as to whether the hearing occurred in Kennewick or Seattle, Washington.  *Compare* AR 10 (Kennewick) *with* 35 (Seattle).

vocational expert Kimberly Mullinax testified in response to questions from the ALJ regarding hypothetical scenarios and follow-up questions from Leonel's attorney.

By the date of the hearing, Leonel was 45 years old and claimed an inability to sustain competitive employment on a regular and continuing basis due to a combination of the following impairments: degenerative disc disease, obesity, and kidney disease. *See* ECF No. 13 at 2.

Leonel testified that he completed high school as well as some college coursework. AR 37. While attending college in approximately 2005, Leonel worked full time during the summer in building maintenance. AR 61. This brief, seasonal employment was the only employment that the ALJ and the vocational expert discussed for purposes of evaluating whether Plaintiff could return to past work. AR 63−66.

Plaintiff lives with his grandmother and helps her with home maintenance and running errands when he is able. AR 39, 48. However, at least twice every two weeks, his back pain becomes so debilitating that he cannot get out of bed. AR 49.

Plaintiff testified that he is able to drive when the pain does not render him homebound. AR 41. Indeed, Plaintiff was in a car accident the week before the administrative hearing. AR 41−42.[4] Leonel reported that he experienced

---

[4] The ALJ gave Plaintiff a three-month window of opportunity to supplement the record with medical records relating to any injuries he sustained in the car accident, but Plaintiff did not submit additional evidence. AR 10.

significant, worsening fatigue over the relevant period, which he attributed to the effects of hepatitis. AR 51. However, Leonel anticipated beginning treatment for hepatitis shortly after the hearing date. AR 52.

Throughout the relevant period, Leonel used marijuana to deal with his back pain, rather than using prescription pain medication to which he fears becoming addicted. AR 51. Leonel obtained medical insurance through the State of Washington in 2016. AR 49. The record supports that Leonel had a disruption in medical insurance coverage before 2016 but does not specify for how long. *See* AR 23; ECF No. 13 at 5. As of May 16, 2017, according to treatment provider notes following an appointment to address Plaintiff's lumbar pain, Plaintiff "had not undergone any physical therapy recently or epidural steroid injections . . . [or] any other conservative treatment to help with his pain." AR 23.

### C. ALJ's Decision

On June 8, 2017, the ALJ issued an unfavorable decision. AR 10−18. Applying the five-step evaluation process, Judge Basse found:

**Step one:** Leonel has not engaged in substantially gainful activity since his application date, February 25, 2014.

**Step two:** Leonel has the following severe impairments: degenerative disc disease and obesity. The ALJ further found: "While the record also mentions other diagnosis [sic], I do not find that it establishes any further severe impairments as that term is defined by the regulations." AR 12. With respect

to Hepatitis C, the ALJ found that medical records indicated that Plaintiff was asymptomatic as of April 2013 and was again noted as stable in April 2016. "It was not until May 2016, less than 12 months ago, that liver function testing was noted to be elevated." AR 13. The ALJ noted that Plaintiff had not yet started treatment for hepatitis at the time of the hearing and was anticipating completing a three-month course of treatment. *Id.* With respect to Plaintiff's description of pain related to kidney stones, the ALJ noted that imaging taken in April 2016 did not confirm any stone present at that time, and the kidney disease diagnosis that Plaintiff received later in 2016 had not lasted the twelve months required by the regulations at the time of the hearing.

**Step three:** Leonel's impairments or combination of impairments do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl." AR 13.

**Step four:** Plaintiff has no past relevant work.

**Step five:** Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in

the national economy that the claimant can perform, including representative occupations such as "cashier II," "cleaner housekeeping," and "assembler, production." *See* AR 17.

Therefore, the ALJ found that Plaintiff was not disabled from February 25, 2014 until the date of the ALJ's decision. AR 17−18. The Appeals Council denied Leonel's request for review, and Leonel timely appealed the ALJ's determination to this Court. ECF No. 1.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall

be determined to be under a disability only if his impairments are of such severity

that the claimant is not only unable to do his previous work, but cannot, considering

the claimant's age, education, and work experiences, engage in any other substantial

gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and

vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one

determines if he is engaged in substantial gainful activities.  If the claimant is

engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision

maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination

of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which

compares the claimant's impairment with a number of listed impairments

acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past. If the plaintiff is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in light of his residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant

can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## DISCUSSION OF ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did the ALJ erroneously find that Plaintiff's impairments did not equal Listing 1.04(A)?
2. Did the ALJ improperly reject the opinions of a medical provider and an agency medical consultant?
1. Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?
2. Did the ALJ fail at step five to formulate a hypothetical question to the vocational expert that contained all of Plaintiff's credible limitations?

### Listing 1.04(A)

Listing 1.04(A) describes the clinical criteria that would make an individual's spinal disorder presumptively disabling.  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

Plaintiff argues that he submitted an MRI showing disc abnormalities that were noted to potentially affect nerve roots.  ECF No. 13 at 8 (citing AR 304).  He further argues that doctors found that Plaintiff's straight leg raising on the left caused some discomfort to Plaintiff's lower back.  *Id.* at 9 (citing AR 317, 319).  Plaintiff asserts that he later had a positive straight leg raising test and reported muscle weakness and numbness.  *Id.* (citing AR 23 and 26).

The Commissioner argues that Plaintiff did not meet his burden of presenting evidence to establish that his impairments were equivalent to the impairments in the

Listing.  The Commissioner continues that the following explanation from the ALJ was sufficient:

> The record does not establish the criteria of any listing has been met or medically equaled.  Specifically, there is no evidence of nerve impingement with muscle weakness, arachnoiditis, or pseudoclaudication.  Listing 1.04.

ECF No. 20 at 5 (citing AR 13).

The ALJ found that Plaintiff's degenerative disc impairment was severe.  AR 12−13.  Once an ALJ determines that a claimant suffers a severe impairment, the ALJ must determine whether the impairment meets or is medically equivalent to one of the listed impairments.  *See* 20 C.F.R. § 404.1520(c), (d).

Listing 1.04 provides the following examples of spinal disorders that may qualify: "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and] vertebral fracture[.]"  *Id.*  Regardless of the specific spinal disorder at issue, to meet Listing 1.04, the disorder must result in "compromise of a nerve root (including the cauda equina) or the spinal cord."  *Id.*

Listing 1.04 further requires that a claimant satisfy additional criteria in either subsections A, B, or C.  Subsection A, at issue in this case, requires a claimant to submit "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex

loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

There are several general principles with respect to the documentation required to demonstrate satisfaction of any of the Listings relating to the musculoskeletal system. Physical findings derived from a physical examination of the claimant "must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation, e.g., 'He says his leg is weak, numb.'" 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(D). The physical examination section continues:

> Alternative testing methods should be used to verify the abnormal findings: e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test. Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation. Care must be taken to ascertain that the reported examination findings are consistent with the individual's daily activities.

*Id.*

Documentation of musculoskeletal impairments generally should consist of "a longitudinal clinical record . . . for the assessment of severity and expected duration of an impairment unless the claim can be decided favorably on the basis of the current evidence." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(H)(1). Section H, addressing documentation, further provides:

> 2. Documentation of medically prescribed treatment and response. Many individuals, especially those who have listing-level impairments,

will have received the benefit of medically prescribed treatment. Whenever evidence of such treatment is available it must be considered.

3. When there is no record of ongoing treatment. Some individuals will not have received ongoing treatment or have an ongoing relationship with the medical community despite the existence of a severe impairment(s). In such cases, evaluation will be made on the basis of the current objective medical evidence and other available evidence, taking into consideration the individual's medical history, symptoms, and medical source opinions. Even though an individual who does not receive treatment may not be able to show an impairment that meets the criteria of one of the musculoskeletal listings, the individual may have an impairment(s) equivalent in severity to one of the listed impairments or be disabled based on consideration of his or her residual functional capacity (RFC) and age, education and work experience.

4. Evaluation when the criteria of a musculoskeletal listing are not met. These listings are only examples of common musculoskeletal disorders that are severe enough to prevent a person from engaging in gainful activity. Therefore, in any case in which an individual has a medically determinable impairment that is not listed, an impairment that does not meet the requirements of a listing, or a combination of impairments no one of which meets the requirements of a listing, we will consider medical equivalence. (See §§ 404.1526 and 416.926.) Individuals who have an impairment (s) with a level of severity that does not meet or equal the criteria of the musculoskeletal listings may or may not have the RFC that would enable them to engage in substantial gainful activity. Evaluation of the impairment(s) of these individuals should proceed through the final steps of the sequential evaluation process in §§ 404.1520 and 416.920 (or, as appropriate, the steps in the medical improvement review standard in §§ 404.1594 and 416.994).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(H)(2)−(4).

While the Court agrees with Plaintiff that the ALJ's reasoning for finding that Plaintiff did not satisfy Listing 1.04(A) was scant, the evidence to which Plaintiff points on appeal does not change the outcome. The MRI, which Plaintiff cites for the proposition that Plaintiff's disc abnormalities "potentially affect" nerve roots,

was performed on May 10, 2012, more than four years before the hearing. *See* AR 303−04. However, where documentation of medically-prescribed treatment is unavailable because, as in Plaintiff's case, there was no ongoing treatment process or relationship with the medical community, an ALJ must evaluate the applicability of the Listing in light of "current objective medical evidence and other available evidence, taking into consideration the individual's medical history, symptoms, and medical source opinions." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(H)(3). Even setting aside that the MRI found only "slight" contraction and displacements of the nerve roots and disc deformities that "potentially affect" the nerve root structures, imagery from 2012 was not "current" in 2017. Given that the 2012 MRI was the only evidence of nerve root compression that Plaintiff pointed to in the record, the ALJ did not err in finding that Plaintiff did not meet the requirements of Listing 1.04(A).

### *Treatment of medical professionals' opinions*

Plaintiff contends that the ALJ erred in rejecting the opinions of nurse practitioner Susan Harp and Brent Packer, MD.

<u>Susan Harp, ARNP</u>

Ms. Harp filled out a state agency form for Plaintiff on January 4, 2011. AR 375−76. Ms. Harp opined that:

- Plaintiff's work function was impaired and was expected to remain impaired for twelve months;

- Plaintiff could stand for fewer than two hours in an eight-hour work day, sit for fewer than two hours in an eight-hour work day, lift fifteen pounds occasionally, and lift five pounds frequently;
- Plaintiff had no postural nor motor skill restrictions;
- Plaintiff had an environment restriction in the form of needing to change positions frequently; and
- Participation in training or employment activities was appropriate for Plaintiff as of January 2011.

*Id.* The ALJ did not address Ms. Harp's evaluation specifically, but instead accorded little weight to that form as well as other "older [State of Washington Department of Social and Health Services] forms that were dated years prior to the date of the claimant's Title XVI application." AR 16. Judge Basse found that the forms were not "as persuasive." *Id.*

Plaintiff maintains that the ALJ was wrong to discount Ms. Harp's opinions on the basis that she made them before Plaintiff's SSI application because Ms. Harp's evaluation was made after Plaintiff's claimed onset date of June 1, 2009. *Id.* Moreover, Plaintiff argues that the ALJ rejected Ms. Harp's opinion as not "persuasive" rather than providing specific and legitimate reasons based on substantial evidence, as required for an examining source. *Id.*

The Commissioner posits that "[p]rovider opinions from years before a claimant alleges he is disabled are of limited relevance." ECF No. 20 at 13 (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)). The Commissioner further urges that an ALJ's finding may be supported by substantial evidence even where two inconsistent conclusions may be drawn from

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

that evidence, and "Plaintiff's own interpretation of the evidence" does not undermine a residual functional capacity determination that is consistent with the overall evidence.  ECF No. 20 at 13−14.

The reason given for conferring minimal weight to Ms. Harp's assessment was specific and legitimate.  The ongoing applicability of Ms. Harp's conclusions to Plaintiff's capacity to work was unclear given the remoteness in time of Ms. Harp's assessment.  Ms. Harp indicated in the medical record at issue that Plaintiff's functional impairment could be expected to last twelve months, and the hearing before the ALJ took place six years after Ms. Harp offered that opinion.  *See* AR 375.  Furthermore, there is no indication that Ms. Harp's interactions with claimant involved significant or ongoing contact beyond the 2011 assessment, and, alternatively, the ALJ could have discounted Ms. Harp's assessment based on the inconsistency of its conclusions with Plaintiff's daily activities and his longitudinal treatment record.  Therefore, the Court does not find any error with respect to the weight that the ALJ afforded Ms. Harp's assessment.

Packer

Dr. Packer, in the capacity of a state agency medical consultant, opined in February 2016 that Plaintiff is limited to sedentary work.  AR 406−07.

Leonel asserts that the ALJ rejected the sedentary work limitation because Dr. Packer's review included only "minimal exam findings," which Plaintiff contends was an invalid reason for rejecting the opinion.  ECF No. 13 at 10.

The Commissioner argues that an ALJ may reject a physician's opinion if it is unreasonable in light of other evidence in the record. ECF No. 20 at 12 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)). The Commissioner continues, "Moreover, the ALJ explained that 'even if the claimant were limited to sedentary work, the vocational expert identified jobs at this exertional level as well.'" *Id.*

An ALJ must accord more weight to a treating physician's opinion than an examining physician's, and an examining physician's opinion carries more weight than a non-examining, reviewing, or consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must articulate "specific and legitimate" reasons, supported by substantial evidence in the record, to reject the opinion of either a treating or an examining doctor. *Lester*, 81 F.3d at 830–31.

The ALJ assigned the form completed by Dr. Packer "minimal weight" because Dr. Packer indicated he had reviewed only two clinical notes from 2012 and the single December 2015 clinical note before concluding that Plaintiff is limited to sedentary work. AR 16. The ALJ noted that those three clinical notes "include minimal exam findings." *Id.* The only evidence that Plaintiff offers to support that Dr. Packer's opinion was based on objective medical evidence is the 2012 MRI that found disc abnormalities that potentially affected nerve roots. ECF No. 13 at 10 (citing AR 406). The 2012 clinical note that describes the MRI findings was one of

the three clinical notes that the ALJ noted that Dr. Packer reviewed. AR 16.

Therefore, Plaintiff does not show that the ALJ's description of the medical record reviewed by Dr. Packer was inaccurate, and Plaintiff does not undermine that the ALJ gave specific and legitimate reasons justifying his decision to discount Dr. Packer's opinion. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for resolving conflicts in the medical record.").

### *Treatment of Plaintiff's symptoms testimony*

Plaintiff argues that Judge Basse did not provide clear and convincing reasons to make a negative credibility finding with respect to Plaintiff's subjective complaints. *See* ECF No. 13 at 12. The Commissioner responds that the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms. ECF No. 20 at 5−11.

First, Plaintiff asserts that the ALJ was wrong to base his negative credibility finding on the fact that Plaintiff sought little treatment because Plaintiff was uninsured for a large portion of the relevant period. ECF No. 13 at 12. Plaintiff further argues, in a similar vein, that the ALJ should not have discredited him for maintaining only a minimal prescribed pain regimen because "[a]s the claimant testified, he did not want to take pain medications because he was worried that he would become addicted to them." *Id.*

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

Conservative treatment is an acceptable reason for an ALJ to discredit a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). "[I]n the case of a complaint of pain, such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). "But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense." *Id.* Obesity is an ailment for which courts have found the second approach proper. *Id.*

An ALJ must first consider "'any explanations that the individual may provide, or other information in the case records, that may explain infrequent or irregular medical visits or failure to seek medical treatment' . . . ." *Orn*, 495 F.3d at 638. An ALJ is wrong to discount an applicant's credibility when a financial inability to pay for medical care adequately explains the failure to seek care during the relevant period. *Id.* However, an ALJ may rely on an applicant's ability to seek and receive other medical care during the relevant period to determine that a complaint regarding an ailment is exaggerated or unjustified. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (affirming ALJ's discounting of applicant's "claim that lack of money prevented her from seeking

help for ongoing problems" "because she sought appropriate medical care . . . for other medical symptoms . . . during the intervening years.").

Here, Plaintiff does not rebut the ALJ's finding that after Plaintiff secured health insurance in 2016, the record indicates that Plaintiff "sought even less treatment for his back pain than he had in the past." AR 15. Based on that timeline, the ALJ could reasonably conclude that lack of health insurance was not a sufficient explanation for Plaintiff's failure to seek medical treatment throughout the relevant period.

The Court likewise finds that Plaintiff's fear of becoming addicted to painkillers does not sufficiently explain why Plaintiff relied instead on over-the-counter pain medications and inactivity to address his back pain. With symptoms of the severity claimed by Plaintiff during his hearing, including being confined to bed nearly every week, *see* AR 53, it is reasonable to expect to see a record of a more persistent effort to seek relief.

Finally, Plaintiff maintains that the activities of daily living cited by the ALJ, including playing poker and throwing darts, are consistent with the alleged limitations and do not show that Plaintiff was able to perform full-time work. ECF No. 13 at 13. While the Court acknowledges that adjudicators cannot expect a claimant to present as "utterly incapacitated" in his activities of daily living, the ALJ in this instance could reasonably have compared Plaintiff's representation that he was bedridden a significant portion of every month with indications in the record

that Plaintiff engaged in activities inconsistent with that level of limitation. *See Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989). The Court accepts Plaintiff's supposition that participating in occasional poker tournaments out of town, shopping, and attending weekly church services do not strongly indicate that Plaintiff could succeed in a work setting. However, the Court does not find that the ALJ erred in considering these inconsistencies between Plaintiff's testimony and others' descriptions of his activity, in addition to Plaintiff's minimal contact with healthcare professionals, in determining that Plaintiff's complaints should not be fully credited. *See Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (recognizing that ALJs may consider a claimant's activities as well as utilize all other ordinary techniques of credibility evaluation in weighing a claimant's credibility).

### Step five other work analysis

Plaintiff argues that the ALJ's finding at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy was unsupported by substantial evidence. Plaintiff's contention is based on his related argument that the ALJ improperly rejected the opinions of Ms. Harp and Dr. Packer and improperly rejected Plaintiff's testimony regarding the severity of his limitations. ECF No. 13 at 15.

In formulating a claimant's capacity to perform past relevant work at step four or other work in the national or regional economy at step five, an ALJ may rely on the testimony of a vocational expert. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162

(9th Cir. 2001). However, the ALJ must include in any hypotheticals posed to a vocational expert only those limitations that are supported by substantial evidence. *Id.* at 1163−65. If the assumptions contained in the hypothetical are not supported by substantial evidence in the record, "the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 518 (9th Cir. 2001).

Given that the Court found no error in the ALJ's treatment of the medical records generated by Ms. Harp and Dr. Packer and no error in the ALJ's treatment of Plaintiff's subjective complaints, there is, correspondingly, no basis to find that the ALJ erred in omitting the functional limitations from those sources at step five of the disability analysis. The Court does not find error in the hypotheticals that the ALJ posed to the vocational expert and does not find error in the conclusions that the ALJ drew from the vocational expert's testimony.

## CONCLUSION

Having found no error in the ALJ's decision, the Court grants the Commissioner's motion for summary judgment and denies Plaintiff's. Accordingly, the Court does not address Plaintiff's request for remand for immediate award of benefits. *See* ECF No. 21 at 8.

**IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

*///*

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 22

3. Judgment shall be entered in favor of the Commissioner.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close this case**.

**DATED** August 2, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge
